UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                          :
UNITED STATES OF AMERICA,                 :   CASE NO. 5:18-CR-180
                                          :
            Plaintiff,                    :
                                          :
v.                                        :   OPINION & ORDER
                                          :   [Resolving Docs. 26, 29, 31, 45, 47, 48]
TERRICK THOMPSON *et al.*,                :
                                          :
            Defendants.                   :
                                          :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Terrick Thompson, Rica Jones, and Edwin Dortch move to suppress evidence collected during a search of Thompson's home.[1] Defendants also request a *Franks* hearing on the grounds that the affidavit supporting the search warrant contained false or misleading information.

For the reasons stated below, the Court **DENIES** Defendants' motion to suppress and **DENIES** Defendants' request for a *Franks* hearing.

## I. BACKGROUND

In considering Defendants' motions to suppress and motions asking for a *Franks* hearing, the Court focuses on whether a search warrant affidavit showed probable cause to search an Akron residence. That search warrant affidavit described a controlled substance sale by a Defendant who directly went from the searched premises to the drug sale.

On February 14, 2018, Detective Mike Schmidt sought a search warrant for 450 West Bartges Street.[2] The warrant specifically asked for the seizure of marijuana, firearms, currency, records, documents, and measuring and processing devices related to drug trafficking.[3] An Akron Municipal Court judge approved the warrant and police executed the warrant on February 16, 2018.[4]

---
[1] Docs. 26, 29, 31. The government opposes. Doc. 32.
[2] Doc. 26-2.
[3] Doc. 32-1 at 5
[4] Doc. 41 at 1.

At the search, Police found and seized "significant quantities of [m]ethamphetamine, fentanyl, heroin and carfentanil, approximately $9,000.00 [in] cash, three handguns, ammunition, and several drug processing items."[5]

Akron Police Detective Schmidt gave an affidavit in support of the search warrant. In his affidavit, Detective Schmidt stated that he met with a confidential informant within seven days of seeking the search warrant and worked with the informant for a structured drug purchase.[6]

According to the affidavit, the informant arranged to meet with Defendant Edwin Dortch at a predetermined location for the marijuana purchase.[7] In preparation for the controlled drug purchase, Detective Schmidt provided the informant with marked police department funds.[8] After the informant set up the drug purchase with Dortch, the affidavit states that a Detective Brown observed Defendant Dortch leave 450 West Bartges Street for the prearranged site for the drug sale.[9] Before the sale, Detective Schmidt searched the informant to insure that the informant had no controlled substances.[10] Detective Schmidt then observed the informant meet with Dortch.[11] Immediately after, Detective Schmidt met with the informant and recovered the marijuana that the informant had purchased from Dortch.[12]

Also within the seven days preceding the application for a search warrant, the affidavit states that Dortch spoke to the same confidential informant and that confidential informant described drug activity at 450 West Bartges Street.[13] According to the affidavit, the informant told Detective Schmidt that the informant had spoken to Dortch, who told the informant that he had marijuana for sale.[14] The affidavit also states that the informant told Schmidt that Defendants Terrick Thompson and Rica

---

[5] Doc. 32 at 2.
[6] Doc. 26-2 at ¶ 2.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at ¶ 3, 6.
[14] *Id.* at ¶ 3.

Jones were involved in the sale of illegal narcotics from the residence.[15]

In vouching for the informant's reliability, the affidavit then states that the informant "has [previously] provided the Affiant with information concerning the possession and sale of controlled substances in the Akron, Summit County, Ohio area" and that Detective Schmidt was able to corroborate the information that the informant earlier provided.[16] The affidavit also stated that the informant "has displayed ... specific knowledge as to the uses, effects and distribution patterns of controlled substances in the Akron, Summit County, Ohio area."[17]

The affidavit also describes earlier narcotics-related activities at 450 West Bartges Street. According to the affidavit, in 2015, Defendant Thompson was arrested when a search of the Bartges Street premises uncovered a .380 caliber handgun under a living room couch, digital scales, drug packaging bags, and $6,710 in cash.[18] The Schmidt affidavit also stated that, following a January 2018 Akron Police visit to the residence for an unrelated matter, a police report listed Thompson's address as 450 West Bartges Street.[19]

Moreover, the affidavit describes a number of connections between the occupants of 450 West Bartges Street and illicit narcotics activities. The affidavit stated that in 2017, Defendant Thompson pled guilty to aggravated possession of drugs.[20] The affidavit also said that, in January 2018, Kevin Cook, a "known large scale drug dealer" who had previous arrests for drug trafficking and possession, was at the Bartges Street residence.[21] Finally, the affidavit said that a vehicle registered to Joseph Sheffield, who has previous arrests for aggravated trafficking, was parked at the residence "on several occasions," including on the day that Detective Schmidt filed his affidavit.[22]

---

[15] *Id.*
[16] *Id.* at ¶ 6.
[17] *Id.*
[18] *Id.* at ¶ 4.
[19] *Id.*
[20] *Id.* at ¶ 12.
[21] *Id.* at ¶ 4.
[22] *Id.* at ¶ 4, 12.

Case No. 5:18-cr-180
Gwin, J.

Defendants challenge the search warrant with the argument that it is not supported by probable cause.[23] Specifically, Defendants argue that probable cause is lacking because Schmidt's affidavit relies on a confidential informant whose credibility was not established.[24] Defendants also argue that the affidavit does not show a sufficient nexus between Dortch's alleged drug dealing and 450 West Bartges Street.[25]

Defendants also request a *Franks* hearing.[26] They argue that the affidavit falsely identified Jones and Dortch as occupants of the residence and that the approving magistrate would not have found probable cause had the affidavit not misidentified them as occupants.

## II. DISCUSSION

### A. Motion to Suppress

1. *Legal Standard*

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ."[27] Probable cause for a search warrant exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[28] The reviewing judicial magistrate "is simply to make a practical, common-sense decision" whether all the facts and circumstances set forth in the supporting affidavit warrant "a reasonably prudent person" to believe that a crime has occurred and the place to be searched contained evidence thereof.[29]

The issuing magistrate should read the affidavit "not hypertechnically, but in a common sense fashion."[30] Where a magistrate judge has a "substantial basis" for concluding that a search would

---

[23] Doc. 26-1.
[24] Doc. 26-1 at 5.
[25] Doc. 26-1 at 7.
[26] Docs. 45, 47. The government responds in opposition to these supplemental motions. Doc. 49. Defendant Thompson moves to join the supplemental motions. Doc. 48. The Court **GRANTS** that motion.
[27] U.S. Const. Amend. IV.
[28] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
[29] *Id.*
[30] *United States v. Ware*, 338 F.3d 476, 482 (6th Cir.2003).

Case No. 5:18-cr-180
Gwin, J.

uncover evidence of wrongdoing, his decision will stand unless a reviewing court finds that he "arbitrarily exercised" his powers of determination.[31]

Even if a search warrant does not contain probable cause for a search, the Fourth Amendment's exclusionary rule allows the "admission of evidence seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective."[32]

2. *Probable Cause*

The affidavit in this case gave sufficient facts for the magistrate to find probable cause to search Thompson's home. The information received from the confidential informant, as well as the police's direct observation of Dortch's activities, establish probable cause to support the 450 West Bartges Street search. Moreover, even if the affidavit did not provide sufficient facts to establish probable cause, officers' good faith reliance on it was reasonable.

First, police received information from a confidential informant that Thompson and Jones were involved in the sale of illegal narcotics from 450 West Bartges Street.[33] Courts look at a totality of the circumstances, including a confidential informant's "veracity, reliability, and basis of knowledge," to determine whether a tip to police establishes probable cause to search.[34] A tip from a known informant of proven reliability may form the basis for probable cause, especially when police independently corroborate details of the tip.[35]

The Sixth Circuit has held that successful past informant assistance helps establish a source's reliability and that "[t]he affidavit need not include a detailed factual basis for [the affiant's] statement

---

[31] *Gates*, 462 U.S. at 238-39; *United States v. Leon*, 468 U.S. 897, 920 (1984); *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993).
[32] *Leon*, 468 U.S.at 897. *See also United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004) (finding that the good faith exception applied because a sufficient nexus existed between the searched residence and illegal activity for police to reasonably believe a warrant valid); *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (upholding a search pursuant to a warrant where the affidavit described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence "was available" to the defendant).
[33] Doc. 26-2 at ¶ 3.
[34] *Illinois v. Gates*, 462 U.S. 213, 230-33 (1983).
[35] *See Draper v. United States*, 358 U.S. 307, 313 (1959).

in order to support the judge's finding of probable cause."[36] However, "where an affidavit substantially relies on hearsay statements provided by a confidential informant, probable cause for a warrant to issue depends on whether the reliability of the informant or sufficient independent police corroboration of the informant's statements can be found within the four corners of the affidavit."[37]

The Schmidt affidavit stated that the confidential informant had previously provided Detective Schmidt with "information concerning the possession and sale of controlled substances in the Akron, Summit County, Ohio area," information that the affiant independently corroborated.[38] The confidential informant's reliability is further enhanced by the Detective Schmidt's independent corroboration of much of the information that the confidential informant provided in this case.

The informant told Detective Schmidt that Defendant Dortch offered that he had marijuana for sale,[39] and the informant successfully bought marijuana from Dortch in a controlled sale that was monitored by the Detective Schmidt.[40]

The informant also apparently identified Thompson as an occupant of 450 West Bartges Street,[41] and the officer independently verified this information by reviewing a recent Akron Police call at the residence that occurred one month before the warrant request.[42]

Given the informant's historical track record, given the informant's track record in this case, and given Detective Schmidt's independent corroboration of much of the informant information, the issuing judge had a substantial basis for finding that there was a fair probability that the police would find evidence of narcotics sales activity at 450 West Bartges Street.

Second, the events surrounding the controlled narcotics buy also establish probable cause to search 450 West Bartges Street.

---

[36] *United States v. May*, 399 F.3d 817, 826 (6th Cir. 2005).
[37] *United States v. Neal*, 577 Fed.Appx. 434, 441 (6th Cir. 2014).
[38] Doc. 26-2 at ¶ 6.
[39] *Id.* at ¶ 3.
[40] *Id.* at ¶ 2.
[41] *Id.* at ¶ 3.
[42] *Id.* at ¶ 4.

Case No. 5:18-cr-180
Gwin, J.

In order to establish probable cause to search a location, "[t]here must be ... be a nexus between the place to be searched and the evidence sought."[43]

Thompson argues[44] that Dortch was not an "occupant" of the Bartges Street premises. The American Heritage Dictionary defines "occupant" as "One that resides in *or uses a physical space*."[45] And the New Oxford American Dictionary defines "occupant" as "a person who resides *or is present in* a house . . . at a given time."[46] So, based on the ordinary meaning of the word "occupant," Detective Schmidt's description of Dortch's affiliation with the Bartges Street premises was accurate—even if he did not live there.

The affidavit states that a detective observed Dortch leave 450 West Bartges Street on his way to a controlled drug buy.[47] Another detective confirmed that Dortch arrived to the controlled drug buy shortly after leaving the Bartges Street address and sold drugs to a confidential informant.[48] In *United States v. Jones*, the Sixth Circuit found that similar circumstances established a nexus to the residence sufficient to support a finding of probable cause, stating, "What matters is ... that [the defendant] left [the residence] and drove straight to a drug deal in which he was the seller."[49]

Nor did Dortch leave just any residence. The issuing judge could also have considered that 450 West Bartges Street had previous connections to narcotics-related activities. The residence had been searched in 2015, when police recovered a handgun, digital scales, drug packaging bags and $6,710.00 in cash.[50] Thompson was a resident of 450 West Bartges Street at the time of the 2015 search and was arrested following it.[51] Thompson also pled guilty in 2017 to aggravated possession of drugs.[52]

---

[43] *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).
[44] Doc. 26-1 at 8.
[45] *Am. Heritage Dictionary of the English Language* 1218 (5th ed. 2016) (emphasis added).
[46] *New Oxford American Dictionary* 1213 (3d ed. 2010) (emphasis added).
[47] Doc. 26-2 at ¶ 2.
[48] *Id.* at ¶ 4.
[49] *See United States v. Jones*, 817 F.3d 489, 491 (6th Cir. 2016).
[50] Doc. 26-2 at ¶ 4.
[51] *Id.*
[52] *Id.* at 12.

Case No. 5:18-cr-180
Gwin, J.

Moreover, the issuing judge could have considered the identities of people who were known to frequent the premises. Akron police officers arrested Kevin Cook, a "known large scale drug dealer" with prior arrests for drug trafficking and possession, at the residence for domestic violence on January 19, 2018.[53] Joseph Sheffield, who had previously been arrested for aggravated drug trafficking, was observed in the 450 West Bartges Street driveway several times, including on the day that Schmidt applied for a search warrant.[54] These facts support the link between 450 West Bartges Street and Dortch's narcotics-selling activities.

Detective Schmidt was not required to show to a certainty that Dortch or the occupants of 450 West Bartges Street ran a narcotics business out of that location. The police's direct observation of Dortch leaving a location with known previous narcotics activity and arriving at a predetermined location to complete a prearranged drug sale gave rise to a fair probability that Dortch or others possessed contraband at 450 West Bartges Street and that evidence relating to this business would be located there.

In sum, the issuing judge could have considered either this directly observed nexus between Dortch's illicit activities and 450 West Bartges Street or the informant's tip about illicit activities at that location, or both, to find probable cause that evidence related to narcotics would be found at 450 West Bartges Street.

*3. Good Faith*

Even if the facts described above had not established probable cause, officers could have relied in good faith on the warrant. For this independent reason, suppression is not warranted in this instance.[55]

As described above, the affidavit did not merely present "suspicions, beliefs, or conclusions" but instead recounted "factual circumstances regarding veracity, reliability, and basis of

---

[53] Doc. 26-2 at ¶ 4.
[54] *Id.* at 4.
[55] See *Leon*, 468 U.S. at 922-26.

knowledge."[56] The affidavit described and provided concrete examples of the confidential informant's reliability and Detective Schmidt's successful efforts to corroborate parts of the informant's tip. It also described the police's direct observation of Dortch leaving the premises and driving to a narcotics sale. Reliance on the warrant was plainly reasonable.

For these reasons, the Court **DENIES** Defendants' Motion to Suppress.

### B. Request for *Franks* Hearing

1. *Legal Standard*

A defendant may be entitled to a so-called *Franks* hearing to prove that the information in the warrant application is false or misleading. But to obtain a *Franks* hearing a defendant must make "a substantial preliminary showing" that both: (1) a false statement was knowingly and intentionally included in the warrant affidavit or was included with reckless disregard for the truth; and (2) that the false statement was "necessary to the finding of probable cause."[57]

2. *No* Franks *Hearing is Warranted*

Dortch and Jones argue that because the affidavit identified Jones, Dortch, and Thompson as occupants of 450 West Bartges Street, while Detective Schmidt had reason to know that Dortch and Jones did not reside there.[58] But as described, an occupant is "[o]ne that resides in *or uses* a physical space."[59] The Schmidt affidavit gave evidence that Dortch and Jones used the 450 West Bartges Street location even if they did not reside there.

And even if the statement identifying all three Defendants as occupants of 450 West Bartges Street was included knowingly and intentionally or with reckless disregard for the truth, the approving magistrate—as outlined above—did not need to find that any of the Defendants resided at that location in order to establish probable cause.

---

[56] *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).
[57] *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) (quoting *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)).
[58] Docs. 45, 47.
[59] *Am. Heritage Dictionary of the English Language* 1218 (5th ed. 2016) (emphasis added).

Case No. 5:18-cr-180
Gwin, J.

First, as explained previously, the affidavit established the reliability of the confidential informant's tip that Thompson and Jones were running a narcotics business out of the house. This did not depend on whether any of the Defendants *resided* at 450 West Bartges Street, although Thompson did. Second, the affidavit also established that Dortch left the Bartges location on the way to a controlled drug buy. This evidence also did not depend on whether any of the Defendants resided there. Defendants thus cannot show that the false statement was necessary to the finding of probable cause.

For these reasons, the Court **DENIES** Defendants' request for a *Franks* hearing.

### III. CONCLUSION

For all of these reasons, the Court **DENIES** Defendants' motion to suppress and **DENIES** Defendants' request for a *Franks* hearing.

The case will proceed to trial as scheduled.

IT IS SO ORDERED.

Dated: May 24, 2018           s/    *James S. Gwin*
                              JAMES S. GWIN
                              UNITED STATES DISTRICT JUDGE